******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# HUGH F. HALL *v.* DEBORAH HALL
## (SC 20181)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff appealed to the Appellate Court from the trial court's judgment
of civil contempt rendered against him in the course of marital dissolu-
tion proceedings. Following the commencement of the dissolution
action, the parties entered into a stipulation, which was approved by
the trial court and made a court order. The stipulation required that
certain funds be deposited into a joint account and provided that the
signatures of both parties were required for withdrawals from that
account. In contravention of the stipulation, the parties set up a joint
account that did not require signatures for withdrawals. After the plain-
tiff withdrew money from the account and placed it in a separate,
personal account, the defendant filed a motion for contempt, which the
trial court granted. The trial court thereafter rendered a judgment of
dissolution, incorporating the parties' separation agreement, which con-
tained a provision that they would file a joint motion to open and vacate
the trial court's contempt finding. Although the parties subsequently
filed the joint motion to open and vacate, the trial court denied it. While
the plaintiff's appeal to the Appellate Court was pending, that court
ordered the trial court to issue an articulation, in which the trial court
stated, inter alia, that its decision to grant the defendant's motion for
contempt was predicated on its finding that the plaintiff had violated
the court's prior order when he initially deposited funds into the non-
compliant joint account and on two other occasions when the plaintiff
made unilateral withdrawals from the account. The plaintiff claimed in
his appeal to the Appellate Court that the trial court had abused its
discretion in finding him in contempt without addressing his claim that,
in violating the court order, he acted in reasonable reliance on the advice
of counsel. The Appellate Court affirmed the trial court's judgment,
concluding that, although the plaintiff testified before the trial court
that he had consulted with counsel prior to withdrawing funds from
the joint account, he did not testify that counsel advised him to do so.
With respect to the trial court's denial of the parties' joint motion to
open and vacate, the Appellate Court determined that, although the
basis for that motion was that the contempt judgment would have a
deleterious effect on the plaintiff's career, the trial court properly denied
it because the plaintiff had not offered any evidence supporting that
assertion. On the granting of certification, the plaintiff appealed to this
court. *Held*:

1. The Appellate Court correctly concluded that the trial court did not abuse
   its discretion in finding the plaintiff in contempt on the basis of his
   wilful violation of a court order: the plaintiff did not present testimony
   or other evidence during the hearing on the motion for contempt that
   would have adequately apprised the trial court that he intended to claim
   that he acted reasonably in reliance on the advice of counsel, and,
   although the plaintiff did make that claim for the first time in his motion
   for reconsideration of the trial court's finding of contempt, he failed to
   present sufficient evidence to substantiate his claim; moreover, the trial
   court found three independent violations of the court order by the
   plaintiff, and, even if this court agreed with the plaintiff that his testimony
   regarding his consultations with counsel was sufficient to demonstrate
   that he reasonably relied on the advice of counsel in making the with-
   drawals, he did not testify that he had consulted with counsel prior to
   setting up the noncompliant joint account or that he had done so in
   reasonable reliance on the advice of counsel, and the plaintiff admitted
   that he did not recall raising the issue of the noncompliant account with
   his attorney; furthermore, certain e-mail exchanges between the plaintiff
   and counsel, which the plaintiff offered as evidence in connection with
   his motion for reconsideration, did not support his claim that he acted
   on the advice of counsel but, rather, supported the trial court's conclu-

sion that the plaintiff's dissatisfaction with his attorney's services was not a basis for reconsideration of the court's finding of wilful contempt.

2. The Appellate Court correctly concluded that the trial court did not abuse its discretion in denying the parties' joint motion to open and vacate the finding of contempt: the trial court enjoyed broad discretion in determining whether to grant the joint motion to open and vacate, and the court was not required to grant the motion merely because the parties were in agreement; moreover, the plaintiff failed to offer any evidence that the contempt finding would negatively impact his career, which, the plaintiff contended, formed the basis for the granting of the motion.

Argued October 17, 2019—officially released April 13, 2020**

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Colin, J.*, issued an order in accordance with the parties' stipulation; thereafter, the court, *Tindill, J.*, granted the defendant's motion for contempt and rendered judgment thereon, from which the plaintiff appealed to the Appellate Court; subsequently, the court, *Hon. Stanley Novack*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Tindill, J.*, denied the parties' joint motion to open and vacate the judgment of contempt, and the plaintiff filed an amended appeal with the Appellate Court, *Lavine*, *Sheldon* and *Bear, Js.*, which affirmed the trial court's judgment of contempt, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Barbara M. Schellenberg*, with whom was *Richard L. Albrecht*, for the appellant (plaintiff).

*Thomas P. Parrino* and *Randi R. Nelson* filed a brief for the Connecticut Chapter of the American Academy of Matrimonial Lawyers as amicus curiae.

*Opinion*

KAHN, J. The plaintiff appeals[1] from the judgment of the Appellate Court, which affirmed the judgment of civil contempt rendered against the plaintiff. The plaintiff claims that the Appellate Court incorrectly concluded that the trial court did not abuse its discretion in (1) finding the plaintiff in contempt of court on the basis of the wilful violation of a court order, and (2) denying the parties' joint motion to open and vacate the judgment of contempt. We affirm the judgment of the Appellate Court.

The Appellate Court set forth the following relevant facts, which are undisputed. "The parties were married on August 10, 1996, and have three children together. On February 3, 2014, the plaintiff commenced a dissolution action. The parties subsequently entered into a pendente lite stipulation on October 27, 2014, which provided in relevant part: 'The funds currently being held in escrow [by a law firm] in the approximate amount of $533,588 shall be released to the parties for deposit into a joint bank account requiring the signature of both parties prior to any withdrawals . . . .' The court, *Colin, J.*, approved the parties' stipulation and made it a court order. After this order, the parties set up a joint account and transferred the escrow funds into it.

"Approximately one year later, on September 23, 2015, the defendant, Deborah Hall, filed a motion for contempt. She alleged that on September 22, 2015, the plaintiff committed a wilful violation of the October 27, 2014 court order when he withdrew the sum of $70,219.99 from the joint account—the balance of the account at the time—and placed it into a separate, personal account.[2] Following an evidentiary hearing, the court, *Tindill, J.*, on December 7, 2015, granted the defendant's motion for contempt." *Hall* v. *Hall*, 182 Conn. App. 736, 738–39, 191 A.3d 182 (2018).

The plaintiff filed a motion seeking reconsideration of that decision on December 21, 2015. The trial court, after hearing oral argument from the parties, denied the relief requested in that motion on January 4, 2016, without issuing a written decision. After the court rendered judgment on the defendant's motion for contempt; see footnote 2 of this opinion; on January 27, 2016, the parties entered into a separation agreement, which the court, *Hon. Stanley Novack*, judge trial referee, accepted on that date and incorporated into the judgment of dissolution. Section 10 of the separation agreement provides in relevant part: "The parties stipulate and agree that they will file a joint motion to open and vacate the findings of contempt in that they believe such findings could interfere with the parties' future employment. . . . The parties understand that this motion must be filed within four (4) months of each of the orders and it is within the discretion of the [c]ourt

to act thereon." On January 27, 2016, the plaintiff filed an appeal with the Appellate Court from the trial court's contempt judgment and its January 4, 2016 decision on his motion for reconsideration.

On February 1, 2016, relying on § 10 of the separation agreement, the parties filed a joint motion to open and vacate the judgment of contempt in part. On March 9, 2016, the trial court, *Tindill, J.*, denied the motion without issuing a written decision. On March 28, 2016, the plaintiff filed an amended appeal with the Appellate Court, challenging the denial of the motion to open and vacate.

On July 15, 2016, the plaintiff filed a motion requesting that the trial court articulate, inter alia, the factual and legal bases for its decision on his motion for reconsideration. The plaintiff's July 15, 2016 motion for articulation also requested an articulation of the factual and legal bases for the court's denial of the parties' joint motion to open and vacate the judgment of contempt. The trial court denied the motion for articulation on July 27, 2016. On October 26, 2016, the Appellate Court granted the plaintiff's motion for review of the trial court's denial of the plaintiff's motion for articulation and ordered the trial court to issue both an articulation of the basis for its decision on the plaintiff's motion for reconsideration and a written memorandum of decision setting forth the factual and legal bases for the denial of the joint motion to open and vacate the contempt judgment. On January 9, 2017, in compliance with the order of the Appellate Court, the trial court issued both a memorandum of decision setting forth the factual and legal bases for its denial of the joint motion to open and vacate and an articulation setting forth the legal and factual bases for its denial of the relief requested in the plaintiff's motion for reconsideration. In the trial court's articulation, the court clarified that its decision granting the defendant's motion for contempt was predicated on its finding that the plaintiff had thrice violated its October 27, 2014 order: when the plaintiff initially deposited the funds in the joint account, which did not comply with the court order, and on two separate occasions when the plaintiff made unilateral withdrawals from that account, $237,643.11 on April 28, 2015, and $70,219.99 on September 22, 2015.

The Appellate Court affirmed the judgment of the trial court. As to the plaintiff's claim that the trial court abused its discretion in finding him in contempt without addressing the plaintiff's claim of reasonable reliance on the advice of counsel, the Appellate Court's review of the record revealed that, although the plaintiff had testified that he had consulted with counsel prior to withdrawing funds from the joint account, he did not testify that he was advised by his counsel to do so. *Hall v. Hall*, supra, 182 Conn. App. 748. In rejecting the plaintiff's second claim, that the trial court abused its

discretion in denying the motion to open and vacate the judgment of contempt, the Appellate Court reasoned that, although the basis for that motion was that the judgment would have a deleterious effect on the plaintiff's career, the trial court properly had denied the motion because the plaintiff had not offered any evidence supporting that assertion. Id., 755–56. This certified appeal followed.

I

We first address the plaintiff's claim that the Appellate Court incorrectly concluded that the trial court acted within its discretion in finding the plaintiff in contempt on the basis of the wilful violation of a court order. The plaintiff contends that the trial court abused its discretion because it failed to consider his testimony during the hearing on the motion for contempt that, when he violated the October 27, 2014 order, he was relying in good faith on his counsel's advice. The plaintiff further claims that the Appellate Court incorrectly concluded, based on its review of the record, that, during the contempt hearing, the plaintiff had not adequately apprised the trial court of his reliance on this theory. We agree with the Appellate Court's conclusion that the record does not support the plaintiff's claim that the trial court abused its discretion in failing to consider whether the plaintiff's actions were not wilful because he reasonably relied on the advice of counsel. As we explain herein, the plaintiff did not present testimony or evidence during the hearing on the motion for contempt that would have adequately apprised the trial court that he intended to claim that he acted reasonably in reliance on the advice of counsel. Although the plaintiff did make that claim for the first time in his motion for reconsideration, he failed to submit sufficient evidence to substantiate the claim and to warrant reconsideration of the contempt judgment.

The following additional, undisputed facts and procedural history, as set forth by the Appellate Court, are relevant to our resolution of this claim. "After the parties set up the joint bank account pursuant to the court's October 27, 2014 order, they knew that the account did not comply with that order 'the very first day' they opened it. More specifically, the joint account they set up permitted online access and, therefore, did not require signatures from either party, as required by the order, prior to the withdrawal or transfer of funds. The plaintiff testified that banks no longer require dual signatures on accounts. Nonetheless, the court order mandating that the funds be placed in an account 'requiring the signature of both parties prior to any withdrawals' was not modified before the defendant filed her motion for contempt." Id., 741.

On April 28, 2015, the plaintiff unilaterally withdrew $237,643.11 from the joint account and moved the money to a savings account solely in his name. The

plaintiff testified that he did so because he was concerned that the defendant, who struggled with addiction and had previously "squandered funds" in connection with her substance abuse problems, would "go on another bender" and deplete the money in the joint account. On September 22, 2015, the plaintiff unilaterally withdrew the remaining amount in the joint account, $70,219.99, and placed it into a separate, personal account.

The court heard testimony and received evidence on the motion for contempt on three separate days, over the course of several months. During the hearing, the plaintiff, who is an attorney licensed to practice law in two states and, at the time of these proceedings, was employed as a senior vice president of a bank, testified at various times that he had "consulted with counsel" during the pendency of the case. Specifically, he testified on two occasions that he had consulted with counsel prior to the September 22, 2015 withdrawal from the joint account. On November 2, 2015, the court asked the plaintiff whether he was represented by counsel when he made the September 22, 2015 withdrawal from the joint account. The plaintiff responded: "Yes, I did consult with counsel." On December 2, 2015, the defendant's counsel questioned the plaintiff as to why he did not immediately move the money from the joint account when he learned in August, 2015, that the defendant had relapsed. In the context of that line of questioning, the court asked the plaintiff when he removed the money from the joint account. The plaintiff responded: "Sometime in September, [2015], after consulting with my counsel about the situation."

The plaintiff also testified that, on two occasions, after discussions with counsel, he had determined *not* to unilaterally withdraw money from the joint account in August, 2015, when he learned that the defendant had relapsed. The plaintiff offered the following testimony to explain the timing of his withdrawal: "That's when I was discussing with my counsel the appropriate course of action, because once there was the violation by [the defendant] of the verbal agreement that we had online access, where we'd agreed we would just not do it even though the court order said something different from what we were doing, we were—we thought [we] were about to settle the entire case, we felt that it was best to just see it through. And it was only when the settlement process fell completely apart and she appeared to be acting erratically, we became more concerned that something had to be done." When the court subsequently asked him what prevented him from withdrawing the funds prior to September, 2015, he testified: "Nothing prevented me. It was more in discussion with counsel on what was the appropriate thing to do in that period of time when we were at the eve of settling the case."

At one point during the hearing, the plaintiff explained that, because he had consulted with counsel during the "entire process," he believed he should not be found in contempt. Specifically, the plaintiff testified: "I believe that what I was doing was in order to comply with Judge Colin's orders from October, 2014. And that I was not utilizing the funds in any way in violation of the spirit of that agreement and that I took steps to try and work with [the defendant] to comply with the order, set up a compliant account, but at that point in time, there was no further cooperation on her side. Furthermore, I would say throughout the entire process, I was consulting with counsel about what was the proper course of action." At the end of the hearing, the parties waived their right to present argument to the court and agreed that the record was sufficient to allow the court to decide the motion for contempt.

The plaintiff presented no testimony that he consulted with counsel prior to setting up the joint account. In fact, when the court asked the plaintiff when his or the defendant's counsel became aware that the joint account did not comply with the court order, the plaintiff first responded that he could not recall whether he notified his counsel of the problem. When the court followed up by asking whether he had contacted his counsel to explain that he had set up a noncompliant account, the plaintiff responded that he did not believe that either he or the defendant had raised it as an issue with their respective counsel.

The trial court's December 7, 2015 memorandum of decision found that the October 27, 2014 order was clear and unambiguous, and that the defendant had engaged in self-help and wilfully violated the order when he unilaterally withdrew funds from the joint account on April 28, 2015, and September 22, 2015.[3] It is evident in reviewing the memorandum of decision that the trial court, at the time it issued its decision, was unaware of any intent by the plaintiff to raise the claim that his violations of the order were not wilful because he reasonably relied on the advice of counsel. The court summarized its understanding of the arguments advanced by the plaintiff in support of his claim that the violations were not wilful as follows: "He offers a variety of reasons: (1) the original account did not 'comply' with the court order in that two signatures were not required for withdrawal, (2) he learned that the defendant had relapsed . . . and was using cocaine and drinking alcohol as of August 13, 2015, (3) the defendant [had] previously misappropriated tens of thousands of dollars in marital assets, (4) the parties were working amicably toward resolution of their differences and had reached agreement . . . and (5) the plaintiff did not wish to pursue the proper legal channels for compliance with the court order due to exorbitant legal fees which would only further diminish the marital

estate to be divided." In its decision, the court rejected each of the arguments it understood the plaintiff to be advancing and made no reference to any argument by the plaintiff that his violations of the October 27, 2014 court order were not wilful because he had reasonably relied on the advice of counsel.

On December 21, 2015, two weeks after the court issued its memorandum of decision granting the defendant's motion for contempt, the plaintiff, representing himself, moved for reconsideration, arguing that the court had misapprehended the facts and had failed to address the issue of whether his actions were not wilful because he acted in reasonable reliance on the advice of counsel. In his motion for reconsideration, the plaintiff conceded that, during the hearing on the motion for contempt, his counsel did not pursue the theory that his violations of the court order were not wilful because he was acting on the advice of counsel. Specifically, the plaintiff argued: "During a hearing on the [motion for contempt] the court inquired of the plaintiff as to whether in moving funds from the parties' joint account he acted on the advice of counsel, to which he testified that he had. The plaintiff's counsel did not pursue this line of questioning and *did not raise it in an oral argument*." (Emphasis added.) In his motion for reconsideration, the plaintiff claimed for the first time that his counsel had directed him to move the funds, and also alleged that his counsel had intentionally concealed that fact from the court. The plaintiff requested that, on reconsideration, the trial court consider additional information—e-mail exchanges between the plaintiff and his counsel—that he claimed demonstrated that he relied on the advice of counsel when he withdrew funds from the joint account in violation of the court order. In support of his motion for reconsideration, the plaintiff alleged that a contempt finding "could negatively impact his career and earnings potential." On December 24, 2015, the plaintiff, through his new counsel, filed an amendment to his motion for reconsideration to correct the date that he transferred the funds from the joint account into his personal account.

In its articulation of the factual and legal bases for its decision on the plaintiff's motion for reconsideration, the trial court noted that, "[i]n reaching its decision to deny [the relief requested in] the motion, the court heard argument from counsel for each party and carefully reviewed the motion, the [plaintiff's] amendment thereto, and reconsidered the evidence submitted during the course of the multiple day hearing."[4] In reaching the merits of the plaintiff's motion for reconsideration, the trial court rejected the plaintiff's assertions that the court had misapprehended the facts and that his conduct was not wilful because he relied on the advice of counsel who subsequently refused to report it to the court. Specifically, the trial court noted that "the [plaintiff's] dissatisfaction with the services and counsel

of his attorney of record during the evidentiary hearing [on the motion for contempt] is not a basis for reconsideration of the court's finding of wilful contempt based on the evidence . . . ." The court also rejected the plaintiff's reliance on the Appellate Court's decision in *O'Brien* v. *O'Brien*, 161 Conn. App. 575, 591 n.15, 128 A.3d 595 (2015), rev'd, 326 Conn. 81, 161 A.3d 1236 (2017), in support of the proposition that "a party may shield [himself] . . . from a finding of wilful contempt by showing that [he] relied on the advice of legal counsel." The trial court noted that, contrary to the plaintiff's argument, the Appellate Court took no position on that question in *O'Brien*. See id. The trial court also noted that, in light of its factual finding that "the act of transferring funds by the [plaintiff] in violation of the court order was intended to circumvent the [defendant's] access," the present case was factually distinguishable from *O'Brien* because, in *O'Brien*, the trial court declined to hold the plaintiff in contempt inasmuch as it found that the plaintiff's actions were not wilful or contumacious. The trial court in the present case also considered it significant that "the [plaintiff] is a licensed attorney in New York and Massachusetts and therefore has a better understanding and appreciation of the law and legal procedures than the average litigant or layperson . . . ."

Because the crux of the plaintiff's claim is that the trial court abused its discretion in failing to address an argument that he raised to that court in support of his claim that his actions were not wilful, we must first resolve the threshold issue of whether he did in fact apprise the trial court of that argument. Our review of the record reveals that the plaintiff's motion for reconsideration was the first time that he had argued that his actions were not wilful because he undertook them in reasonable reliance on the advice of counsel to withdraw funds from the joint account. As we have detailed in this opinion, at the contempt hearing, the plaintiff testified on numerous occasions that he consulted or had discussions with counsel. We agree with the Appellate Court, however, that the plaintiff has not pointed to *any* testimony or any other evidence presented during the contempt hearing demonstrating that his counsel advised him to withdraw money unilaterally from the joint account and that he made the withdrawals in reasonable reliance on that advice.[5] Having established that the plaintiff adequately raised, in his motion for consideration, his claim that he acted on advice of counsel, we now turn to the claims that he raised before the trial court and that court's bases for its contempt order and subsequent denial of the relief requested in his motion for reconsideration.

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 692, 935 A.2d 1021 (2007). Our review of a trial

court's judgment of civil contempt involves a two part inquiry. "[W]e first consider the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 380, 107 A.3d 920 (2015). "Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court. . . . Without a finding of wilfulness, a trial court cannot find contempt and, it follows, cannot impose contempt penalties." (Citation omitted.) *O'Brien* v. *O'Brien*, 326 Conn. 81, 98–99, 161 A.3d 1236 (2017).

The trial court found *three* independent violations of the October 27, 2014 order by the plaintiff—the opening of the noncompliant, joint account and the two unilateral withdrawals. Even if we agreed with the plaintiff that his testimony, during the evidentiary hearing, regarding his consultations with counsel was sufficient to demonstrate that he reasonably relied on the advice of counsel in making the unilateral withdrawals—and we do not—he did not testify that he had consulted with counsel prior to setting up the joint account or that he did so in reasonable reliance on the advice of counsel. To the contrary, when questioned by the court, the plaintiff admitted that he did not recall raising the issue of the noncompliant, joint account with his attorney.

Likewise, the plaintiff's motion for reconsideration does not support his claim that his conduct was not wilful because he acted on the advice and at the direction of his counsel. The evidence proffered in support of his claim consisted of e-mail exchanges between him and his counsel. The e-mail exchanges are not entirely clear because they lack some context, but they do appear to involve a discussion of whether the plaintiff should move funds from the joint account without first obtaining the defendant's approval. A reasonable reading of them reveals the following: The plaintiff e-mailed his counsel on September 8, 2015, requesting that a "motion for permission to control the joint funds" be filed, highlighting that the defendant had taken funds from the account. In response, on the same day, the plaintiff's counsel reminded him that "[he] suggested [the plaintiff] move the funds out of [the] Chase [account] and into a joint account with controls. That didn't happen?" The plaintiff responded by indicating

that he did not do so because he had been out of town, had been busy, "[had] to time things carefully," and "need[ed] access to that money more than [the defendant did]." The plaintiff's counsel urged him to "just move the funds" to an account with joint controls in compliance with the court order, which would obviate the need for a motion for permission to control the joint funds, because the plaintiff would then "have control. Not exclusive . . . mutual control as the stip[ulation] intended." When the plaintiff continued to insist on filing a motion for exclusive control over the joint funds, his counsel responded, "move funds Monday, notifying [the defendant]. No motion." The plaintiff's counsel also reminded the plaintiff that, although the stipulation required the defendant to sign off on his withdrawals from the joint account, it also "entitled [the plaintiff to] take [$8000] out a month to pay for expenses in excess of [his] income . . . ." Contrary to the plaintiff's claim, it is reasonable to conclude that the exchanges do not establish that he acted on the advice of counsel. The e-mail exchanges support the trial court's conclusion that the plaintiff's "dissatisfaction with the services and counsel of his attorney of record during the evidentiary hearing is not a basis for reconsideration of the court's finding of [wilful] contempt based on the evidence . . . ." Given the plaintiff's failure to present sufficient evidence to support a finding that he acted on advice of counsel,[6] the trial court's denial of the relief requested in the plaintiff's motion for reconsideration was not an abuse of discretion.

## II

We next consider whether the Appellate Court correctly concluded that the trial court did not abuse its discretion by denying the parties' joint motion to open and vacate the judgment of contempt. The plaintiff argues that, in denying the joint motion, the trial court improperly ignored the stipulation of the parties that they believed that a contempt finding "could interfere with the parties' future employment." (Internal quotation marks omitted.) We are not persuaded.

The following additional facts and procedural history are relevant to our resolution of this question. Consistent with § 10 of the parties' separation agreement, on February 1, 2016, within the four month period set by General Statutes § 52-212a, the parties filed a joint motion to open and vacate the judgment of contempt. In the joint motion, the parties submitted that it would be in the interest of justice for the court to vacate the findings of contempt as to both parties and to leave the compliance orders in force. See footnote 2 of this opinion. The plaintiff's counsel argued in support of the motion that a contempt finding would have a deleterious effect on the plaintiff's career. The plaintiff's counsel further noted that, as an attorney who "has

licenses in the securities field," the plaintiff is required to report to licensing organizations whether he had been held in contempt. During the hearing on the joint motion to open, the trial court questioned the plaintiff's claim that he was in a unique position because he had securities certifications and licenses, observing generally that others are subject to similar oversight and reporting requirements. The plaintiff did not introduce any evidence to support his claim that a contempt finding would negatively impact his career.

In the trial court's memorandum of decision, issued in compliance with the order of the Appellate Court, the court set forth the factual and legal bases for its denial of the motion to open and vacate the judgment of contempt. The court observed in its decision that there had been no evidence presented that "the parties' circumstances are unique or distinguishable such that findings of [wilful] contempt, made after due process of law in accordance with applicable rules of practice and statutory authority, should be vacated in the interests of justice." (Footnote omitted.) The court also noted that the plaintiff had not argued during the hearing on the motion for contempt that a finding of contempt would negatively impact his career.

We begin by setting forth the principles that guide our review. "We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Reville* v. *Reville*, 312 Conn. 428, 440, 93 A.3d 1076 (2014).

The primary basis that the trial court relied on in denying the parties' motion to open and vacate the judgment of contempt was that the plaintiff presented no evidence to support his claim that a contempt finding would negatively impact his career. The court also considered that, prior to arriving at its finding that the plaintiff had wilfully violated the October 27, 2014 court order, it had given ample opportunity to the parties to present argument and to introduce evidence on the motion for contempt. Based on this record, we conclude that the Appellate Court correctly concluded that the trial court did not abuse its discretion in denying the motion to open and vacate the judgment of contempt.

We find unpersuasive the plaintiff's reliance on the fact that the motion to open and vacate the judgment of contempt was made jointly and was pursuant to the

parties' stipulation that they would seek to have the judgment of contempt vacated. The trial court enjoyed broad discretion in determining whether to grant the motion to open and vacate the judgment of contempt—neither the parties' joint motion nor their stipulation narrowed the breadth of that discretion. See *O'Brien* v. *O'Brien*, supra, 326 Conn. 96 ("It has long been settled that a trial court has the authority to enforce its own orders. This authority arises from the common law and is inherent in the court's function as a tribunal with the power to decide disputes."), citing *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 737–38, 444 A.2d 196 (1982). In *O'Brien*, this court noted that a trial court's enforcement power is "necessary to preserve its dignity and to protect its proceedings." (Internal quotation marks omitted.) *O'Brien* v. *O'Brien*, supra, 96–97, quoting *Allstate Ins. Co.* v. *Mottolese*, 261 Conn. 521, 530, 803 A.2d 311 (2002); see also *Middlebrook* v. *State*, 43 Conn. 257, 268 (1876) ("[a] court of justice must of necessity have the power to preserve its own dignity and protect itself"). A party to a court proceeding must obey the court's orders unless and until they are modified or rescinded, and may not engage in "self-help" by disobeying a court order to achieve the party's desired end. The court was not required to grant the motion merely because the parties were in agreement.

The plaintiff points to various aspects of the record that he claims the trial court and the Appellate Court should have considered in determining whether he had offered any evidence in support of his assertion that his employment would be negatively impacted by the contempt finding. Specifically, he points to the following: (1) the joint stipulation, in which the parties stated that they believed that the contempt finding could interfere with the plaintiff's employment, (2) the trial court's finding that the plaintiff is an attorney employed as the senior vice president of a bank, and (3) the defendant's representation that she "would like to move forward with her life." (Internal quotation marks omitted.) None of this information calls into question the trial court's finding that the plaintiff failed to offer any evidence that the contempt finding would negatively impact the plaintiff's career.

The plaintiff also argues that, in its memorandum of decision setting forth the factual and legal bases for its denial of the joint motion to open and vacate the judgment of contempt, the trial court improperly discussed both the possible reasons that may have motivated the defendant to join the motion to open and vacate, and the amount of time that the court spent hearing argument and receiving evidence on the motion for contempt. We find neither of these arguments persuasive. The trial court's decision properly focused on the failure of the plaintiff to produce evidence that a finding of contempt could negatively impact his career. Neither the court's discussion of the defendant's possi-

ble motives in agreeing to the stipulation nor its discussion of the amount of time the court allocated to the contempt hearings calls that determination into question.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices Palmer, McDonald, D'Auria, Mullins, Kahn and Ecker. Although Justice Mullins was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

** April 13, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] This court granted the plaintiff's petition for certification to appeal, limited to the following issues: "(1) Did the Appellate Court properly conclude that the trial court did not abuse its discretion in finding the plaintiff in contempt of court based on the wilful violation of a court order?

"(2) If the answer to the first question is 'yes,' did the Appellate Court properly conclude that the trial court did not abuse its discretion by denying the parties' joint motion to open and vacate the judgment of contempt?" *Hall* v. *Hall*, 330 Conn. 911, 193 A.3d 48 (2018).

[2] "The plaintiff also filed a motion for contempt on September 24, 2015, alleging that the defendant violated the same October 27, 2014 order on various occasions. The court granted the plaintiff's motion in part and denied it in part. The defendant did not submit a brief in this appeal and, therefore, does not challenge the contempt judgment as to her. As discussed in this opinion, however, the court's contempt judgment against the defendant is partially implicated by this appeal insofar as the joint motion to open and vacate the judgments of contempt sought to vacate the court's judgments of contempt rendered against each of the parties. Because the judgment of contempt against the defendant is not otherwise implicated by this appeal, however, references in this opinion to the judgment of contempt refers to the judgment rendered against the plaintiff." (Emphasis omitted.) *Hall* v. *Hall*, 182 Conn. App. 736, 739 n.1, 191 A.3d 182 (2018).

[3] In a subsection of the memorandum of decision entitled "Plaintiff's Violations of the Order," the court made clear that it considered the plaintiff's two unilateral withdrawals from the joint account to have violated the October 27, 2014 order. Although the court also stated that the joint account did not comply with the order, it did not expressly state that it found that the parties had violated the order when setting up the joint account. As we explained in this opinion, however, the trial court later clarified that it found that the setting up of the joint account was a violation of the court order.

The plaintiff does not dispute that his actions violated the October 27, 2014 order.

[4] Both the plaintiff and the Appellate Court's decision characterize the trial court's denial of the motion for reconsideration as a refusal to consider his claim that he did not act wilfully because of his reliance on the advice of counsel and his attachments in support of that claim. Although we understand how the trial court's summary denial of the motion might lead to the plaintiff's conclusion, a review of the record and the trial court's articulation of its decision on the motion for reconsideration demonstrates that its order is more properly characterized as a grant of the motion for reconsideration but a denial of the relief requested therein. In its articulation, the trial court specifically referred to and addressed the arguments raised in the motion for reconsideration, including the plaintiff's advice of counsel claim.

[5] The plaintiff argues that the Appellate Court improperly engaged in factfinding when it reviewed the record to determine whether he argued to the trial court that he acted in reasonable reliance on the advice of counsel. To the contrary, the Appellate Court's analysis, like our own, focuses on whether the trial court was adequately apprised of the plaintiff's intent to argue that he had acted in reliance on the advice of counsel. The only available method for resolving that issue is to review the record. The Appellate Court properly considered all of the evidence that the plaintiff introduced that arguably could have alerted the trial court to his reliance on that theory and concluded it was inadequate. Nothing in that analysis involved fact-finding.

[6] Because we conclude that the plaintiff did not establish that his actions

were not wilful because he acted in reasonable reliance on the advice of counsel, we need not resolve whether such a defense would have had merit. Neither this court nor the Appellate Court has addressed the issue of whether acting on the advice of counsel is a viable defense in a contempt proceeding. See *Baker* v. *Baker*, 95 Conn. App. 826, 832 n.7, 898 A.2d 253 (2006).

---